IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

K3 PROP, LLC,

                        Plaintiff,                        OPINION & ORDER

    v.

GQ SAND, LLC,                                          16-cv-142-jdp

                        Defendant.

---

On July 6, 2017, the court dismissed this case for lack of subject matter jurisdiction after plaintiff K3 Prop, LLC, failed to adduce evidence sufficient to establish its citizenship. Dkt. 65. It awarded defendant GQ Sand, LLC, its reasonable actual attorney fees and costs. Both parties have submitted numerous filings concerning the amount of fees and who should pay them—K3 or its counsel. *See* Dkt. 61; Dkt. 64; Dkt. 69; Dkt. 71; Dkt. 72; Dkts. 77–81. GQ contends that K3's counsel should be held jointly and severally liable for fees under Federal Rule of Civil Procedure 11. The court agrees. But it will reduce the amount of fees requested.

BACKGROUND

Plaintiff K3 Prop, LLC, procures frac sand for its customers in the petroleum industry. In March 2017, it filed this lawsuit against defendant GQ Sand, LLC, alleging that GQ breached the parties' frac sand purchase agreement and converted K3's funds for its own use. K3 invoked this court's subject matter jurisdiction under 28 U.S.C. § 1332. But the allegations in K3's initial complaint were insufficient to determine whether the parties were completely diverse because K3 failed to allege the names or citizenships of any of its or GQ's members. *See* Dkt. 1. The court allowed K3 to file an amended complaint establishing subject matter

jurisdiction. Dkt. 14. K3 did so, alleging that K3's sole member is Charles Cody Lyon, a citizen of Texas, and that GQ's members are Joe Gargano and Joshua Quisling, both citizens of Wisconsin. Dkt. 16. Those allegations were sufficient to establish subject matter jurisdiction at the pleading stage. Dkt. 18.

Other than amending its complaint, K3 didn't do much in the case. It failed to participate in the court's preliminary pretrial conference. *See* Dkt. 15, at 1. It failed to answer GQ's counterclaims, prompting the court to enter default. Dkt. 25. (The court set aside the entry of default and allowed K3 to file a supplemental answer based on its counsel's representation that he forgot to record the answer deadline. Dkt. 38.) After GQ moved for summary judgment, K3 filed a response that put the veracity of its earlier allegations regarding its citizenship in doubt. It adduced a document titled "Membership Interests Purchase and Sale Agreement," dated July 29, 2015, which purports to transfer membership of K3 from Kenneth C. White, III, and Kenneth C. White, Jr., to Managed Owners Group, LLC. Jim R. Pierce signed the document on behalf of Managed Owners Group as its manager. Dkt. 48-5. The agreement does not mention Charles Cody Lyon.

Faced with evidence calling into question K3's allegation that Lyon was its sole member, the court ordered K3 to adduce evidence sufficient to determine the members of K3 and the citizenship of each member. Dkt. 63. It warned K3 that failure to timely submit evidence would result in prompt dismissal of the matter for lack of subject matter jurisdiction with an award of fees and costs to GQ. The court also addressed a side issue: in opposition to GQ's summary judgment motion, K3 adduced Lyon's declaration and several exhibits attached to the declaration. Dkt. 48. GQ claimed that Lyons was recently sentenced to 30 years in prison and was therefore unable to testify at trial. The court ordered K3 to show that the content of Lyon's

declaration—the sole evidence it adduced in opposition to GQ's summary judgment motion, other than the frac sand purchase agreement—would be admissible at trial and warned K3 that failure to make this showing would result in the court striking Lyon's declaration and its attachments.

Despite the warning, K3 failed to respond to the court's order. So the court dismissed the case and invited GQ to file documentation supporting the attorney fees that it incurred in defending the action. Dkt. 65.

ANALYSIS

The court has already awarded attorney costs and fees to GQ. There is no question that K3 is liable for the award. But the parties seek the court's decision on two remaining issues: K3's attorneys' joint liability for the award under Rule 11 and the amount of the award.

First, GQ asks that K3's counsel be held jointly and severally liable with K3 as a sanction under Rule 11. Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support

> after a reasonable opportunity for further investigation or discover; and
>
> (4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(c) allows for sanctions when Rule 11(b) has been violated. Those sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and may include "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" if "warranted for effective deterrence." Fed. R. Civ. P. 11(c)(4). "[T]he court retains the power to consider a Rule 11 motion" regardless of whether it has subject matter jurisdiction. *Wojan v. Gen. Motors Corp.*, 851 F.2d 969, 972 (7th Cir. 1988).

Rule 11 sanctions are punitive; their purpose is not to compensate the prevailing party. "A court should not impose sanctions on a party that loses an argument, as long as the argument was not entirely groundless." *Philos Techs., Inc. v. Philos & D., Inc.*, 802 F.3d 905, 917 (7th Cir. 2015). But "deterrence may well include the payment of expenses and attorneys' fees generated as a result of the filing of abusive litigation." *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 646 (7th Cir. 1992).

GQ demands sanctions because the allegations in K3's complaint, including allegations of K3's members and citizenship, were not made in good faith and lacked evidentiary support. GQ theorizes that Lyon was the driving force behind the litigation and that he convinced his counsel to bring this suit only to harass GQ and convince it to settle a different suit against another company owned by Lyon.

The "failure to determine the existence of diversity prior to filing suit and [the] failure to respond promptly when the error came to light are certainly appropriate grounds for the

4

imposition of Rule 11 sanctions." *Pollution Control Indus. of Am., Inc. v. Van Gundy*, 21 F.3d 152, 155 (7th Cir. 1994); *accord Wojan*, 851 F.2d at 975 ("Litigants, particularly those who bear the burden of proof, must be prepared to establish the existence of jurisdiction or at the least have made steps toward that goal. Failing to do so, they must be prepared to face sanctions for their dereliction."). Here, K3's attorneys presented to the court an answer containing allegations of K3's citizenship that were contradicted by evidence in K3's possession. When the court pointed out this contradiction and asked K3 to correct it, K3 remained silent. K3's attorneys were not prepared to establish the existence of subject matter jurisdiction and failed to respond promptly when their error came to light. Sanctions against counsel are appropriate.

K3 finally attempts to address the citizenship issue in its proposed surreply to GQ's sanctions motion. Dkt. 71-1. It adduces a "Certificate of Amendment" for K3 filed in the Office of the Secretary of the State of Texas on July 29, 2016, which removes Kenneth C. White, Jr., as a member of the LLC and adds Charles Cody Lyon as a member. Dkt. 71-2. The certificate is signed by Lyon. *Id.* at 4. K3 also adduces the affidavit of Kenneth C. White, III, which indicates that White sold K3 on July 29, 2015. Dkt. 71-6. The court will deny K3 leave to file this surreply because K3 could and should have adduced this evidence in its response brief, if not in response to the court's jurisdictional order. But even if the court were to consider K3's surreply, it still does not resolve the issues of K3's membership and citizenship. The "Membership Interests Purchase and Sale Agreement" presented to the court by K3 indicates that Kenneth C. White, III, and Kenneth C. White, Jr., sold K3 to Managed Owners Group, managed by Jim R. Pierce, on July 29, 2015. Dkt. 48-5. Kenneth C. White, III's affidavit confirms this. Dkt. 71-6. K3 filed this lawsuit on March 7, 2016. Dkt. 1. There is no evidence that Lyon was a member of K3 at that point. The "Certificate of Amendment" adduced by K3

indicates that Lyon named himself as a member of K3 on July 29, 2016, but there's no indication that Lyon had the authority to do so. The other documents indicate that K3 was owned by Managed Owners Group, not Lyon. There's no evidence showing a link between Managed Owners Group and Lyon, aside from online records from the Texas Comptroller of Public Accounts, *see* Dkt. 63, at 2 n.2, which K3 admits are not always correct. *See* Dkt. 71-1, at 3 ("Admittingly, some confusion exists as to the information published on the Texas Secretary of State's website identifying Ken White as the manager and director of K3.").

K3's attorneys explain that they were limited in their "ability to confer with K3's sole member in order to obtain proof of complete diversity of citizenship" because Lyon is currently incarcerated and their response brief was due the day after Independence Day. *Id.* at 3, n.2. But they should have been prepared to establish the existence of jurisdiction long before GQ filed its motion for sanctions. The fact that they waited until after the discovery cutoff and dispositive motions deadline to gather evidence of K3's citizenship is no excuse.

So sanctions against K3's attorneys are appropriate. The Seventh Circuit has instructed district courts to "assess a sanction only in the amount of those fees *reasonably* incurred in responding to sanctionable filings." *Katz v. Household Int'l, Inc.*, 36 F.3d 670, 676 (7th Cir. 1994). Here, each of K3's filings is sanctionable—it is "the failure to determine the existence of diversity prior to filing suit" that is grounds for sanctions. *Pollution Control Indus.*, 21 F.3d at 155. The court will hold K3's attorneys jointly and severally liable for GQ's reasonable actual attorney fees and costs incurred in defending this suit.

That brings us to the second issue: the amount of fees. GQ has submitted a petition for attorney fees totaling $29,187.08. Dkt. 72. GQ attached to its petition an itemized time sheet detailing the time that its counsel spent on this case (totaling $17,330), as well as an itemized

invoice detailing the time that GQ's former counsel spent defending K3's previous lawsuit filed in Harris County, Texas (totaling $11,857.08). The court will not award attorney fees for work performed on a different suit before a different court that did not base its jurisdiction on the complete diversity of citizenship, even if, as GQ contends, the Harris County suit brought the same claims and was dismissed because a forum selection clause mandated that the claims be brought in this court.

Setting aside the Harris County fees, the court must determine the amount of reasonable actual attorney fees. To do so, it uses a lodestar method, "multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). GQ seeks a total of $17,330 for the 91.10 hours that its attorneys spent working on this case. The two attorneys who performed work charge $190 per hour and $220 per hour.

The Seventh Circuit "define[s] a reasonable hourly rate as one that is 'derived from the market rate for the services rendered' [and] presume[s] that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Id.* at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). As evidence of reasonableness, GQ has submitted an affidavit from one of its attorneys indicating that these are the normal rates they charge and invoices indicating that GQ has paid them at these rates. Dkt. 73 and Dkt. 73-3. GQ also adduces an affidavit from another attorney, Christopher Dodge, who believes that the rates GQ's attorneys charge are reasonable. Dkt. 74. K3 argues that Dodge's affidavit fails to establish reasonableness, but even without Dodge's affidavit, the actual billing rates are presumptively reasonable. *See Pickett*, 664 F.3d at 640. Based on the evidence provided and the

7

court's experience in a range of cases in this district, the court finds that the rates that GQ's attorneys charged for this case are reasonable.

As for the reasonableness of the hours that GQ's attorneys billed, the court must determine "the number of hours reasonably expended," *id.* at 639, which does not include hours that were "excessive, duplicative, or unnecessary" or hours than an attorney would not normally bill to a paying client. *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Here, GQ's attorneys *did* bill all of their hours to GQ. *See* Dkt. 73, ¶ 13 (indicating on July 20, 2017, that counsel billed GQ for all work except that performed in July 2017, which would be billed in August). K3 complains that counsel billed for some tasks that are clerical. "[T]ime spent on clerical tasks should not be compensated," and although routine tasks may be compensated, the time spent on them should reflect their routine nature. *Hannon v. Unum Life Ins. Co. of Am.*, No. 12-cv-992, 2014 WL 4653058, at *2 (S.D. Ind. Aug. 6, 2014). K3 does not point out which tasks it takes issue with, and the court sees no purely clerical tasks that should not have been billed. K3 also asks the court not to award fees for any work performed after July 6, 2017, when the court dismissed the case. But K3 makes no argument in support of this request. Awards of fees commonly include expenses incurred in obtaining the award of fees. *See, e.g.*, *Robinson v. City of Harvey*, 617 F.3d 915, 917 (7th Cir. 2010); *Mowery v. Metro. Life Ins. Co.*, No. 16-cv-516, 2017 WL 3575857, at *3 (W.D. Wis. Aug. 18, 2017). The hours that GQ's attorneys billed were reasonably expended, so the court will not reduce them.

ORDER

IT IS ORDERED that:

1. Defendant GQ Sand, LLC's motion for sanctions, Dkt. 61, is GRANTED.

2. Plaintiff K3 Prop, LLC's motion for leave to file surreply, Dkt. 71, is DENIED.

3. Defendant petition for attorney fees, Dkt. 72, is GRANTED in part and DENIED in part, as explained above.

4. Defendant's motion to strike plaintiff's response, Dkt. 79, is DENIED as moot.

5. Defendant's motion for leave to file reply, Dkt. 80, is DENIED as moot.

6. Defendant is awarded fees and costs in the total amount of $17,330.

7. Plaintiff and plaintiff's counsel are jointly and severally liable for the award of attorney fees and costs.

8. The clerk of court is directed to enter judgment to reflect the award of attorney fees and costs.

Entered October 31, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge